UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY V. BOUGHTON,

                              Plaintiff,          12-CV-06008

                v.                                **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security,

                              Defendant.
_____


### INTRODUCTION

Plaintiff, Mary V. Boughton ("plaintiff"), brings this action pursuant to §§ 216(i) and 223 of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), that the plaintiff is not disabled. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge, James E. Dombeck("ALJ"), that the plaintiff was not disabled within the meaning of the Social Security Act, was not supported by substantial evidence in the record.

Both the plaintiff and the commissioner move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"). The plaintiff claims that the ALJ's decision is not supported by substantial evidence in the record. The commissioner in response claims the decision of the commissioner is supported by substantial evidence in the record and should be affirmed. Therefore, for the

reasons set forth below, the commissioner's motion for judgement on the pleadings is granted, and the plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed for disability insurance benefits on October 2, 2009 alleging disability due to back injury and attention deficit disorder ("ADD"). The application was denied. Plaintiff filed a request for a hearing on February 24, 2010, which was held on March 2, 2011. The ALJ found that plaintiff was not entitled to disability insurance benefits because she was not disabled within the meaning of the Act. Subsequently, a request for review of the hearing decision was filed with the Appeals Council. The Appeals Council denied the request on November 10, 2011. Consequently, the ALJ's hearing decision became the final decision of the commissioner.

## DISCUSSION

**I.   Jurisdiction and Scope of Review**

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  When considering these cases, this section directs the Court to accept the findings of fact made by the commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938).  The

Court's scope of review is limited to whether or not the commissioner's findings were supported by substantial evidence in the record, and whether the commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case de novo). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The plaintiff moves for judgement on the pleadings pursuant to Rule 12(c), on the grounds that the ALJ's decision is not supported by substantial evidence in the record and is not in accordance with the applicable legal standards. In response, the commissioner claims that the ALJ's decision should be affirmed since it is supported by substantial evidence in the record and its motion for judgment on the pleadings should be granted. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). This Court finds that there was substantial evidence

in the record to support the ALJ's finding that the plaintiff was not disabled within the meaning of the Act between June 1, 2008 and April 25, 2011. Therefore, the commissioner's motion for judgment on the pleadings is granted, the ALJ's decision is affirmed, and the plaintiff's motion is denied.

## II.   **There is Substantial Evidence in the Record to Support the Commissioner's Decision that the Plaintiff was not Disabled from June 1, 2008 to April 25, 2011.**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Transcript of Administrative Proceedings at 18-19) (hereinafter "Tr."). The five-step analysis requires the ALJ to consider the following:

(1)   Whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment which significantly limits her physical or mental ability to do basic work activities;

(3)   if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4)   if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5)   if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

4

Here, the ALJ found that 1) the plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; (2) the plaintiff had the severe impairments chronic thoracic and lumbar sprain and morbid obesity; (3) the plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the plaintiff could not perform any past relevant work; and (5) the plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). (Tr. at 20).   Therefore, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 24).

A.   The Medical Evidence

On February 29, 2008 plaintiff saw Donovan Holder, M.D., for a medical consultation and treatment for mid and low back pain. (Tr. at 220-21). Dr. Holder noted that plaintiff was in no acute distress and lumbar flexion was grossly normal without significant pain. Id. During the consultation, lumbar extension was normal with mild low back pain, seated straight leg raising was negative, and reflexes, motor and sensory examination were normal. Id. Dr. Holder diagnosed degenerative disc disease with low back pain syndrome, and mechanical low back pain syndrome and prescribed a series of three lumbar epidural steroid blocks. Id. Plaintiff concluded treatment with Dr. Holder after two treatments of radio-frequency neurolysis, on April 24, 2008 and May 22, 2008. (Tr. 222).

On September 23, 2008, plaintiff underwent an MRI of the lumbar spine. (Tr. 199). The results showed a worsening protrusion at L3-L4 and a disc herniation. Id. There was also a mild central protrusion with indentation of the thecal sac at T11-T12. Id.

On October 9, 2008, plaintiff underwent surgery for a right great toe injury. (Tr. 209). The injury occurred on October 3, 2008 as a result of plaintiff kicking her foot into a wall. Id.

On August 26, 2009, plaintiff saw Baker Mitchell, M.D., a pain fellow at the University Pain Management Center at the University of Rochester Medical Center (the "Pain Center"). (Tr. 245-47). Plaintiff related a history of low back pain that, until June 1, 2008, was sufficiently manageable to allow her to work full-time. (Tr. 245). However, on June 1, 2008, plaintiff was involved in a motor vehicle accident that worsened her pain and prevented employment. Id.

Dr. Mitchell described plaintiff as well-developed and obese, and stated that Plaintiff appeared in no acute distress. (Tr. 247). The doctor also observed that plaintiff sat easily in the examination chair. Id. Plaintiff had a nonantalgic gait. Id. Dr. Mitchell reported tenderness to palpation over plaintiff's lower thoracic region, but no tenderness over the lumbar or Sacroiliac regions. Id. Straight leg raising was negative, and deep tendon reflexes were two-plus in plaintiff's lower extremities. Id. The doctor also reported that motor strength was five out of five

and there were no sensory deficits. Id. Dr. Mitchell's diagnosed chronic thoracic and low back pain with some lumbar facetogenic features. Id. The doctor also opined that plaintiff's pain perception was being modulated by an underlying psycho effective disorder. Id. He prescribed a thoracic epidural steroid injection and advised plaintiff to continue using over-the-counter pain relievers and recommended physical therapy. Id.

Plaintiff returned to the Pain Center on September 23, 2009 to see Annie Philip, M.D. (Tr. 243). Dr. Philip noted that plaintiff was given an epidural steroid injection three weeks earlier, resulting in substantial improvement. Id. Plaintiff noted that the pain had worsened the previous night. Id. Plaintiff denied any numbness or tingling in her legs. Id. Dr. Philip noted that plaintiff had not started the recommended physical therapy. Id. Dr. Philip examined plaintiff and reported limited lumbar extension and flexion due to pain. Id. Strength testing showed four out of five strength in plaintiff's hip adductors and five out of five in all other areas. (Tr. 244). Dr. Philip observed no sensory deficit. Id. Dr. Philip's diagnosed thoracolumbar chronic back pain and degenerative disc disease at T11-T12. Id. The doctor recommended an epidural injection at the T11-T12 disc and gave plaintiff a prescription for Skelaxin. Id.

On September 25, 2009, Annie Gomez, M.D., ordered x-rays of plaintiff's thoracic and lumbar spine, because of complaints of

worsening pain. (Tr. 198). The x-rays showed disc disease in L5-S1, but did not warrant an impression of any acute disease. Id.

In October 2009, plaintiff saw Stephen Basler, Psy.D. at University of Rochester Medical Center for psychiatric and psychological assessment. (Tr. 240-41). Dr. Basler reported that plaintiff demonstrated no significant abnormality in recent or remote memory, attention span, or concentration. Id. During the evaluation, plaintiff was logical, organized and productive, and presented no evidence of thought disorder, hallucinations, delusions or loose associations. Id. Dr. Basley noted that plaintiff was agitated and fairly intense, especially while discussing her dedication to the care of her two young children, ages five and three. Id. Plaintiff stated that her mood had been fairly good, but acknowledged some dysthymia related to her pain and recent separation from her boyfriend. Id. Plaintiff also reported that she had been previously diagnosed and treated with medication for attention deficit hyperactivity disorder ("ADHD"), but plaintiff expressed doubts as whether that diagnosis had been correct. Id.

During this visit, plaintiff stated that she spent her day caring for her children, getting them off to school, and caring for the household. Id. She also said that she tried to walk a mile a day, and had not worked since June 2002. Id. Dr. Basler diagnosed pain disorder with both psychological factors and a general medical

condition and adjustment disorder with dysthmic and anxious features. Id.

On November 11, 2009, plaintiff saw Sandra Boehlert, M.D. at the request of the Social Security Administration. (Tr. 255-258). Plaintiff related a history of low back pain since 2004. Id. Plaintiff reported walking a mile regularly in order to "loosen up" her back, as well as, weekly chiropractic visits. Id. Plaintiff stated that she cooked three times daily, shopped one a month, and cared for her children daily. Id. She reported requiring help with cleaning and laundry and, despite her efforts, still experienced low back pain radiating into her right side and right hip. Id. According to the doctor, plaintiff stood 66 inches and weighed 231 pounds. Id. She appeared to be in no acute distress, having a normal gait and stance and was able to squat fully. Id. The doctor also reported that plaintiff needed no help getting on or off the exam table or rising from a chair. (Tr. 256).

Dr. Boelert observed plaintiff's lumbar flexion at 85 degrees, and lumbar extension and rotation were performed to the full limit. (Tr. 257). Lateral flexion was limited to 25 degrees bilaterally. Id. Plaintiff had five out of five strength in her upper and lower extremities, and her joints were stable and nontender. Id. Plaintiff's deep tendon reflexes were physiologic and equal in her upper and lower extremities. Id. Plaintiff presented no motor or sensory deficit, and there was no evidence of muscle atrophy. Id.

Dr. Boehlert diagnosed low back and hip pain, musculoskeletal in nature, and right first toe status post fracture with hardware. Id. Dr. Boehlert opined that plaintiff was mildly limited in activities involving standing or heavy walking, bending or twisting. (Tr. 258).

On November 18, 2009, at the request of Social Security, Kavitha Finnity, Ph.D., a licensed psychologist, evaluated plaintiff. (Tr. 259-62). Plaintiff drove herself to the appointment. (Tr. 259). Plaintiff stated that she completed one year of college. Id. She was last employed as a developmental aide for a state group home where she worked for three years until she was injured in a car accident in June 2008. Id. Plaintiff reported no history of psychiatric hospitalization though there was a short history of marriage counseling during her previous marriage. Id. Plaintiff had difficulty sleeping, but denied any depressive or anxiety-related symptoms. Plaintiff reported difficulty with attention, concentration, and focus, and reported a history of ADD. Id.

Dr. Finnity reported that plaintiff was appropriately dressed and well-groomed, her gait, posture and motor behavior were normal, and eye contact was appropriate. (Tr. 260). Plaintiff's attention and concentration, as well as recent and remote memory were intact, and her cognitive functioning was estimated as average. Id. Dr. Finnity diagnosed ADD by history, but reported that plaintiff

10

can maintain attention, concentration, a regular schedule and learn and perform complex tasks. Id. Dr. Finnity opined that plaintiff was able to make appropriate decisions and relate to others, but may have some mild difficulty dealing with stress. (Tr. 261).

On February 4, 2010, plaintiff saw Dr. Philip for thoracic spine pain. (Tr. 343). Plaintiff had received three months of pain relief as a result of a thoracic epidural injection in October, but the pain was slowly returning. Id. Plaintiff denied any weakness, numbness or tingling in her lower extremities, but complained of significant left knee pain. Id. The doctor observed that plaintiff had a normal gait, but tenderness in the thoracic region. Id. The doctor also reported that plaintiff had normal strength in her upper and lower extremities. Id. Dr. Philip's diagnosed was thoracic back pain secondary to degenerative disc disease, and recommended another epidural steroid injection. Id.

On May 19, 2010, plaintiff saw Dr. Philip and reported that the epidural she received in February, had helped her mid-back pain, but she was experiencing discomfort in her left leg and pain radiating down her right leg. (Tr. 341). Plaintiff refused regular medication because it inhibited the care for her two toddlers. Id. Dr. Philip observed that plaintiff appeared uncomfortable and presented a flat affect. Id. Plaintiff exhibited tenderness over the thoracic and lumbar regions. Id. Straight leg raising was somewhat positive, primarily on the left leg. Id. Physical

11

examination revealed good motor strength, no sensory deficit, and a normal gait. Id. Dr. Philip's diagnosed a history of mid-thoracic back pain due to degenerative disc disease at the L3-L4 region with radicular-type symptoms in both legs, which improved with thoracic epidural injections. (Tr. 242). X-rays were ordered and revealed unremarkable findings. (Tr. 366-67).

On September 22, 2010, Plaintiff returned to Dr. Philip with chronic mid-back pain. (Tr. 339-40). Plaintiff reported that she was attending school and sitting through the day was very uncomfortable due to back pain. Id. Plaintiff had not been sleeping well due to pain, and requested to be put back on Trazodone to help her sleep. (Tr. 339). Dr. Philip reported that plaintiff was in mild distress, with some mild tender palpation in the midthoracic and low back region of the spine. (Tr. 339-40). The doctor also reported that the x-rays performed in May showed no fracture or dislocation. Id.

In November 2010 plaintiff sprained her right ankle while walking. (Tr. 336). Physical therapy and anti-inflammatory medication were prescribed. (Tr. 335).

On January 13, 2011, plaintiff saw Dr. Philip. (Tr. 338). Plaintiff related that she received about three weeks of pain relief from the last epidural injection. Id. Further, she stated that she fell on her right hip in October, and had since been experiencing right hip pain. Id. The examination revealed

12

tenderness to palpitation in the lower thoracic region and right iliac crest. Id. Plaintiff had normal strength in her lower extremities and normal sensation to light touch, as well as normal reflexes. Id. Dr. Philip's impression was low thoracic back pain secondary to underlying disc protrusion. Id.

On February 17, 2011, plaintiff saw Abdul Shahid, M.D., at the Pain Center. (Tr. 313). Plaintiff stated that she was treated for thoracic pain with epidural injections and the thoracic pain had been eliminated. Id. However, plaintiff complained of low back pain radiating to her middle upper back and buttocks. Id. Plaintiff claimed that the pain limited her ability to stand and walk, and only rest relieved the pain. Id. Plaintiff was pursuing gastric stapling to reduce her weight. Id.

Dr. Shahid reported that plaintiff was in no acute distress while sitting in a chair, and was able to rise from the chair without difficulty. Id. Plaintiff had a non-antalgic gait. Id. Range of lumbar motion was restricted, and the doctor reported tenderness in plaintiff's lumbar region. Id. Plaintiff had five-plus strength in her upper and lower extremities with no evidence of sensory deficit and two-plus reflexes. Id. The doctor reported that plaintiff's recent and remote memory was intact, her affect appropriate, speech clear and mood not depressed. Id. Dr. Shahid diagnosed mechanical low back pain, and recommended an injection in

the iliolumbar band, and gave plaintiff a prescription for Nucynta. (Tr. 314).

B. Testimonial Evidence

At her hearing before the ALJ on March 2, 2011, plaintiff testified that she was 27 years old. (Tr. 29). She stated she had been on unemployment benefits since 2009, but had not been looking for work. Id. Plaintiff testified that she was commuting seven minutes by car to college. (Tr. 31).

Plaintiff had been employed as a developmental aide for three years, caring for disabled individuals. (Tr. 33). During this time, plaintiff testified that she coped with her degenerative disc disease that was diagnosed in 2004. (Tr. 34). However, she was no longer able to continue her employment following a motor vehicle accident on June 1, 2008. (Tr. 32). She testified that the accident aggravated her back pain, which became progressively worse. Id.

Plaintiff testified that she has great difficulty vacuuming and doing the laundry. (Tr. 37). This difficulty is especially acute where plaintiff has to deal with stairs. (Tr. 38). Plaintiff testified that she "avoids stairs at all costs." Id. However, plaintiff did use the stairs whenever able to put her children to bed. Id. Plaintiff also testified that she had difficulty walking and required breaks while putting away groceries. (Tr. 47).

When asked whether she could sit through a 60 minute television program, Plaintiff responded stating she prefers reading

to television, which allows her to lay down more comfortably. Id. Plaintiff also testified that she could stand for 15 to 20 minutes before she had to move around. (Tr. 40).

Plaintiff testified that she was attending college three days a week, and made the Dean's List the previous semester. (Tr. 49). She stated that on Monday she was in classes for four hours, on Wednesday she had classes for six hours, and on Friday she had classes for three hours. (Tr. 50) Plaintiff testified that the professors were understanding and allowed her to stand up after sitting for a while (Tr. 47).

C.    The ALJ's Determination that Plaintiff Can Perform Light Work
      is Supported by Substantial Evidence.

The ALJ determined that plaintiff's residual functional capacity was limited to the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 20). The Code of Federal Regulations defines light work as:

> lifting no more than 20 pounds at a time occasionally, with frequent lighting or carrying of objects weighing up to ten pounds. 20 CFR 404.1567(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. Id. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. Id. If someone can do light work, we determine that unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. Id.

20 CFR 404.1567(b).

15

In making this determination, the ALJ relied on plaintiff's testimony and objective medical evidence. (Tr. 20-23). Plaintiff stated she regularly performed household chores and took care of her children. (Tr. 37; Noted by ALJ at Tr. 21). Plaintiff had difficulty with stairs, but used them whenever possible to put her children to bed. (Tr. 38; Noted by ALJ at Tr. 21).

Regarding objective medical evidence, the record consistently showed plaintiff had full motor strength in her upper and lower extremities.  (Tr. 247; 257; 314; 338; 341). Multiple medical reports demonstrate plaintiff walking up to a mile to improve her back pain. (Tr. 241; 256; Noted by ALJ at Tr. 22). Dr. Boehlert diagnosed mild limitations only for sitting, standing, walking and twisting. (Tr. 255-258; Noted by ALJ at Tr. 23). Dr. Boehlert also noted plaintiff's ability to squat fully, get on and off the exam table without assistance and rise from a chair without difficulty. (Tr. 256). The record also shows substantial pain relief resulting from the injections that plaintiff received. (Tr. 243; 338; 341; Noted by ALJ at Tr. 22).

After reviewing the complete record, including the evidence cited herein, the Court finds that the ALJ's determination of plaintiff's residual functional capacity was limited to the full range of light work is supported by substantial evidence. (Tr. 20).

D.   The ALJ's Findings Regarding Plaintiff's Mental Impairments
     Are Supported by Substantial Evidence.

Plaintiff argues that the ALJ should have found her depression to be a severe mental impairment. (Plaintiff's Brief at 16). Plaintiff further argues that even if her depression was not severe, the cumulative effect of her depression symptoms, ADHD/ADD symptoms and her physical impairments, were not properly considered by the ALJ when making his residual functional capacity determination. (Plaintiff's Brief at 14-16).

The ALJ found no severe mental impairment and determined that plaintiff could perform the full range of light work. (Tr. 20). The ALJ found that plaintiff's mental health did not contribute to her functional limitations stating, "[n]o mental health treatment has been reported .... [a]dditionally, Dr. Finnity reported no psychiatric diagnosis other than ADHD by history (i.e., undocumented/unconfirmed)". (Tr. 23). Regarding plaintiff's ADHD/ADD symptoms, the ALJ specifically noted "ADD apparently has not impacted negatively upon her academic performance, and appears well controlled with medications." (Tr. 21).

A mental impairment is not severe where "it does not significantly limit your ... mental ability to do basic work activities." 20 CFR 404.1521(a). The following are examples of "basic work activities": "walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." 20 C.F.R. § 404.1521(b)(1)-(5). "[T]he combined effect of a claimant's impairments must be considered ... the [commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995).

In a psychosocial evaluation by Dr. Basler, Psy.D., plaintiff noted "some dysthymia related to the cumulative effect of the pain."(Tr. 240). She reported a depressed mood, social withdrawal, irritability, diminished self-esteem, fatigue, and some anxiety." Id. Plaintiff denied any suicidal or homicidal ideation. Id. Plaintiff admitted that her mood had been "fairly good." Id. Plaintiff also noted doubts about whether a previous diagnosis of ADD had been correct. Id.

Dr. Basler found no significant abnormality in recent or remote memory, attention span, or concentration. (Tr. 240-41). He found plaintiff to be logical, organized and productive with no evidence of thought disorder. Id. Dr. Basler diagnosed a pain disorder associated with psychological factors and a general medical condition. (Tr. 241) He also diagnosed adjustment disorder with features of dysthymia and anxiety. Id.

18

In a second psychological evaluation with Dr. Finnity, Ph.D., plaintiff presented a flat affect, but denied any depressive or anxiety-related symptoms. (Tr. 259-60). Plaintiff had no record of psychiatric hospitalization. Id. Dr. Finnity found that plaintiff's attention and concentration, as well as recent and remote memory were intact, and her cognitive functioning was estimated as average. (Tr. 260). Dr. Finnity's only mental health diagnosis was ADD by history. (Tr. 261).

Plaintiff testified that she was taking college courses at Finger Lakes Community College ("FLCC") three days a week. (Tr. 47; 50). She testified that on any given day she attended class for between three and six hours. (Tr. 50). When asked about her "most involved day" at FLCC, Plaintiff testified that she had back-to-back classes, including a three hour class. (Tr. 48). Plaintiff testified that she studies at home twice a week for three hours at a time. (Tr. 51). Plaintiff testified that her ADD medicine helped her to pay attention during class. Id. However, plaintiff noted that she sometimes does "catch [her]self paying more attention to [other classmates] than the professor...." Id. Notably, plaintiff also testified to making the Dean's List. Id.

The record contains substantial evidence to support the ALJ's finding that plaintiff's claims of depression are not a severe impairment and do not affect plaintiff's ability to perform basic work activities. Plaintiff has no history of psychiatric

hospitalization. (Tr. 260). In plaintiff's most recent psychological evaluation, Plaintiff denied any symptoms of depression or anxiety. (Tr. 259-60). While the record contains some evidence suggesting possible symptoms of depression, there is no evidence, either testimonial or medical, suggesting that plaintiff's depression significantly limits her ability to perform basic work activities. See 20 C.F.R. § 404.1521(b)(1)-(5).

There is also substantial evidence to support the ALJ's determination that plaintiff's ADHD/ADD did not contribute to any functional loss suffered by plaintiff. Neither psychological exam produced evidence of impaired attention span, or concentration. (Tr. 240-41; 260). Plaintiff's recent memory and remote memory were intact during both evaluations. Id. Finally, plaintiff testified to being successful in school and making the Dean's List. (Tr. 51). Thus, substantial evidence in the record supports the ALJ's conclusion that plaintiff does not suffer from any mental impairment that affects her ability to perform basic work activities.

E.   The ALJ's Determination of Plaintiff's Residual Functional Capacity without a Function-by-Function Analysis was Harmless Error.

Plaintiff claims the limitations resulting from her obesity and mental health impairments were not considered by the ALJ in determining plaintiff's residual functional capacity and that the ALJ did not perform a function-by-function analysis. (Tr. 21). The

20

ALJ found that plaintiff's residual functional capacity was limited to light work without a function-by-function analysis. (Tr. 20).

This Court has held that the failure to conduct a function-by-function analysis is subject to a harmless error standard. Drennen v. Astrue, 2012 U.S. Dist. LEXIS 2362, *13 (W.D.N.Y. Jan. 9, 2012). Additionally, this District has found that a lack of function-by-function analysis is harmless error where the ALJ's determination is not conclusory and discusses the medical record in detail. Cichocki v. Astrue, 2012 U.S. Dist. LEXIS 106023 *28 (W.D.N.Y. July 28, 2012). Where an ALJ did not cite a single medical record, did not address contravening medical evidence and, subsequently, did not employ a function-by-function analysis, the reviewing court remanded for want of a function-by-function analysis. Hogan v. Astrue, 491 F. Supp. 2d 347 (W.D.N.Y. 2007).

Here, the ALJ did not conduct a function-by-function analysis supporting his light work determination, but he thoroughly considered the plaintiff's medical records, the opinions of several doctors, and the plaintiff's testimony. (Tr. 20-23). Plaintiff has not indicated how the ALJ's failure to conduct a function-by-function analysis affected her residual functional capacity determination, but merely argues that the regulations require the function-by-function analysis. However, where, as here, the ALJ conducted a thorough review of the record,

considering all of the medical and testimonial evidence, the ALJ's ommission of a function-by-functions analysis is harmless error.

Further, as the Court found above, the ALJ properly determined that plaintiff's alleged mental health impairments do not contribute to her inability to perform work related functions. Similarly, there is no evidence in the record indicating that plaintiff's obesity contributes to her impairments. While several physicians note her weight, no physician diagnosed any resulting limitations. (Tr. 220-21; 245-47; 244; 255-58; 338; 314). Therefore, the Court finds that the ALJ's residual functional capacity determination is supported by substantial evidence in the record, and the ALJ did not err by failing to consider plaintiff's mental impairments or obesity, or his failure to conduct a function-by-function analysis.

F.   The Commissioner Was Not Required to Consult a Vocational Expert in Determining Plaintiff's RFC

Plaintiff claims that her nonexertional impairments of "depression, anxiety, difficulty concentrating, fatigue, and pain" required the ALJ to consult a vocational expert. (Plaintiff's Brief at 22). Ordinarily, "the commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). "A vocational expert is only necessary ... where there is evidence that the claimant's nonexertional limitations 'so narrow [her]

22

possible range of work as to deprive [her] of a meaningful employment opportunity.'" <u>Taylor v. Barnhart</u>, 83 Fed. Appx. 347, 350-351 (2d Cir. 2003) (<u>quoting</u> Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)).

As discussed above, the ALJ properly found that plaintiff's mental health does not contribute to her functional limitations. With respect to plaintiff's pain, where an ALJ properly finds pain not disabling, the ALJ need not consult a vocational expert. <u>See</u> <u>Taylor</u>, 83 Fed. Appx. at 350. As discussed above, the ALJ, here, properly determined that plaintiff's pain was not disabling as she was found to have only mild limitations and experienced significant relief from epidural steroid injections. (Tr. 243; 255-58; 338; 341). Therefore, the ALJ was not required to consult a vocational expert in the present case.

G. <u>The ALJ made no Substantial Misstatements of Fact and Applied the Appropriate Legal Standard in Assessing Plaintiff's Credibility.</u>

Plaintiff argues that the ALJ made misstatements of fact and did not apply the appropriate legal standard in assessing her credibility. (Plaintiff's Brief at 17). Plaintiff alleged a misstatement of fact by the ALJ when the ALJ referred to plaintiff as a "full time college student." (Plaintiff's Brief at 18). Plaintiff also argues that the ALJ's reliance on plaintiff's receipt of unemployment insurance benefits and lack of corroborating witness testimony or treating physician support for

total disability in making a credibility assessment was improper. (Plaintiff's Brief at 18-19).

The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [a 'light work' residual functional capacity finding]." (Tr. 22). Thus, the ALJ found without merit any statements by the plaintiff to the effect that she could not lift up to 20 pounds occasionally, up to ten pounds frequently, and undertake a good deal of walking. See 20 CFR 404.1567(b).

When medical evidence demonstrates an impairment that can reasonably be expected to produce a claimant's symptoms, the ALJ must evaluate the effect of those symptoms on the claimant's capacity to work. 20 CFR 404.1529(c)(1). Where there is inconsistency between the symptoms described by an individual and the objective medical evidence the ALJ must make a credibility determination with respect to the individual that considers the following seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for

relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 CFR 404.1529(c)(3).

Plaintiff testified that she regularly performed household chores and took care of her children. (Tr. 37; Noted by ALJ at Tr. 21). She had difficulty with stairs, but used them whenever possible to put her children to bed. (Tr. 38; Noted by ALJ at Tr. 21). Plaintiff testified that she could not use the vacuum or the steam cleaner. (Tr. 37; Noted by ALJ at Tr. 21). Plaintiff stated that she can carry a gallon of milk at most. (Tr. 39; Noted by ALJ at 21).

The record reveals that Plaintiff had full motor strength in her upper and lower extremities.  (Tr. 247; 257; 314; 338; 341). Plaintiff reported on several occasions that she regularly walked up to a mile to improve her back pain. (Tr. 241; 256; Noted by ALJ at Tr. 22). Dr. Boehlert found only mild limitations for sitting, standing, walking and twisting. (Tr. 255-258; Noted by ALJ at Tr. 23). Dr. Boehlert also noted plaintiff's ability to squat fully, get on and off the exam table without assistance and rise from a chair without difficulty. (Tr. 256). The record shows substantial pain relief resulting from the injections that plaintiff received. (Tr. 243; 338; 341; Noted by ALJ at Tr. 22).

Despite the above medical evidence, plaintiff testified that she feels as if she needs a forklift to get out of bed. (Tr. 48-49). This is in spite of the fact that she repeatedly had no difficulty moving between chairs and tables during medical examinations. (Tr. 247; 256; 313). Plaintiff's testimony that she could carry a gallon of milk at most (Tr. 39)is also inconsistent with objective medical evidence that repeatedly demonstrated plaintiff's full strength in her upper extremities. (Tr. 247; 257; 314; 338; 341).

In making his credibility determination, the ALJ explicitly noted six of the seven factors in 20 CFR 404.1529(c)(3): plaintiff's daily activities (Tr. 21), the location, duration, frequency and intensity of plaintiff's pain (Tr. 21), factors precipitating and aggravating plaintiff's pain (Tr. 22), effective medications for plaintiff's pain (Tr. 22), treatments other than medication undertaken by plaintiff (Tr. 21-22), and other factors, such as the lack of either corroborating testimony or diagnosis of total disability by a treating physician (Tr. 22). The Court finds that the ALJ followed the proper legal standard for making the credibility determination in his decision.

Finally, regarding plaintiff's allegation of a misstatement of fact by the ALJ, there is nothing in the record indicating whether plaintiff was a "full-time" student or a "part-time" student. The ALJ, however, accurately recounted plaintiff's

testimony as to the time she spent in school. (Tr. 21). Therefore, the ALJ made no material misstatements of fact.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.  Therefore, I grant the Commissioner's motion for judgment on the pleadings. The Plaintiff's motion is denied, and her complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           January 17, 2013